IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

United States of America

    v.                                 Case No. 2:18-cr-200

Dion Washington

OPINION AND ORDER

    This matter is before the court on the motion of the defendant to suppress evidence seized from his backpack at the time of his arrest. The court held an evidentiary hearing on the motion on December 10, 2018. Two officers testified at the hearing and exhibits were admitted. The facts are not in dispute.

I. Factual Background

    On March 12, 2018, Columbus Police Officers Kerry Cibulskas and Robert Reffitt responded to a dispatch to a residence located at 1564 East Long Street, Columbus, Ohio. The caller reported that a male was kicking her front door. The officers arrived at the residence at approximately 6:30 a.m., when it was still dark outside. The officers suspected that a burglary may be in progress, as they knew of other incidents involving early-morning burglaries in the area. They also thought that the call might involve a domestic disturbance. Officer Reffitt noted that domestic situations involve more heightened concerns about officer safety. Upon arriving at the house, the officers heard yelling and observed a male wearing dark clothing standing on the front porch with his back to the street. At the hearing, the officers identified this man as being the defendant. The covered porch area and front door were three steps up from the sidewalk. The porch featured a low, solid brick wall to the side of the front door

which functioned as a railing for the porch area.

The officers approached with guns drawn and pointed downward, identified themselves as police officers, and ordered defendant to show his hands. Defendant had to be told several times to do so, and he did not turn around immediately. He finally turned around to face the officers, and took his hands out of his pockets. He removed a backpack, which was fastened on his back by straps over both shoulders, and tossed it to his right onto the porch, about two to three feet away. This would have placed the backpack behind the low brick wall and out of view from the street. Officer Reffitt thought that this was odd, as the officers did not tell defendant to remove the backpack, nor was it necessary for defendant to remove the backpack in order to show his hands. Officer Cibulskas testified that he had handcuffed people with backpacks on and women with purses. Officer Cibulskas placed defendant in handcuffs for the safety of the officers and removed him from the porch to the walkway leading up to the porch.

A female exited the residence from the front door. Defendant became agitated, and he and the woman began yelling at each other and arguing back and forth. At that point, Officer Reffitt went inside with the woman to get her side of the story while Officer Cibulskas spoke with the defendant. Officer Cibulskas asked defendant why he kicked at the door. Defendant stated that he come to visit his children for the weekend and had property in the house, but that the woman would not let him in. He was concerned about getting to the Greyhound station in time to catch a bus. Defendant gave his name to the officer, and other officers arriving at the scene began a check for outstanding warrants. During this

2

period, Officer Reffitt spoke with the woman for three to five minutes. The woman reported to Officer Reffitt that defendant was the father of her children, but that defendant did not live there and she did not want him there.

Officers Cibulskas and Reffitt then conferred and decided that because no violence had occurred and the door was not damaged, no criminal charges would be filed based on the female's complaints. Officer Cibulskas informed Officer Reffitt that defendant wanted some clothing he had left at the house. Officer Reffitt re-entered the residence and obtained two shirts and some shoes from the female. He placed these items and the backpack on the top of the porch wall.

Another officer at the scene reported that there were no outstanding warrants for defendant's arrest. Officer Cibulskas uncuffed the defendant and offered to give defendant a ride to the bus station. At this time, Officer Cibulskas was focused on the defendant and did not see what Officer Reffitt was doing with the backpack. Although the officers intended to release defendant, there is no evidence that defendant was told that he was free to leave. After uncuffing the defendant, Officer Cibulskas had not cleared the run, as he still had safety concerns that defendant could become violent or charge into the house.

Based on his earlier observations of the defendant's actions, particularly defendant's act of separating himself from the backpack, Officer Reffitt had concerns about officer safety and decided to give the backpack a pat before returning it to the defendant. At that time, defendant was standing about four to five feet away from the backpack, in front of Officer Cibulskas. The

3

defendant watched Officer Reffitt handle the backpack, but did not say anything. Through the thick fabric of the bag, Officer Reffitt felt a hard square object approximately two by three inches, which was large enough to be a weapon. At that point, he wasn't sure what the object was, but could not rule out the possibility that it was a weapon. He unzipped the outer pocket of the backpack and felt inside to get a better feel of the object. He was able to feel the outline of a firearm and the trigger guard. Officer Reffitt flashed three fingers twice at Officer Cibulskas, that being the code to arrest the defendant, and defendant was again placed in handcuffs. Officer Reffitt unzipped the backpack and removed the firearm which was at the top of the bag. The entire investigation lasted about fifteen to twenty minutes from the arrival of the officers at the scene to defendant's arrest.

II. Abandonment

The government first argues that defendant cannot contest the pat-down search of the backpack because he abandoned it by throwing it onto the porch floor.

The search and seizure of abandoned property does not violate the Fourth Amendment. Abel v. United States, 362 U.S. 217, 241 (1960). Abandonment is primarily a question of intent, which may be inferred from words, acts, and other objective facts. United States v. Dillard, 78 F. App'x 505, 510 (6th Cir. 2003). A critical fact is the location of the object, that is, whether it is on private property or in a public location. Id.

In this case, defendant tossed the backpack a few feet away, behind a solid brick wall on the porch of the residence, which was not a public location. Defendant did not protest the probing of

4

the backpack, but he also made no statements disavowing ownership of the backpack. Although, as will be discussed <u>infra.</u>, it was reasonable for Officer Reffitt to conclude that defendant was hoping to conceal or to avoid the discovery of a weapon or contraband in the backpack by throwing it aside, the court is not convinced that defendant intended to completely abandon the backpack; rather, it is likely that he hoped to retrieve it unopened at the end of the encounter.

### III. Frisk of the Backpack for Weapons

The government further argues that the pat-down of the backpack was reasonable as part of an investigative stop pursuant to <u>Terry v. Ohio</u>, 392 U.S. 1 (1968). Under <u>Terry</u>, a police officer may conduct a brief stop for investigative purposes to make reasonable inquiries and to confirm or dispel his suspicions so long as the officer can point to specific and articulable facts arousing reasonable suspicion of criminal activity. <u>Id.</u> at 21-22; <u>United States v. Campbell</u>, 549 F.3d 365, 370 (6th Cir. 2008). Reasonable suspicion requires more than a mere hunch, but is satisfied by a likelihood of criminal activity less than probable cause. <u>Dorsey v. Barber</u>, 517 F.3d 389, 395 (6th Cir. 2008). The reasonable suspicion necessary for a <u>Terry</u> stop is based on the totality of the circumstances to determine whether the individual factors, taken as a whole, give rise to reasonable suspicion, even if each individual factor is entirely consistent with innocent behavior when examined separately. <u>Campbell</u>, 549 F.3d at 371; <u>United States v. Walker</u>, 181 F.3d 774, 778 (6th Cir. 1999). Officers may draw on their own experience and specialized training to make inferences from and deductions about the cumulative

information available to them.  United States v. Pearce, 531 F.3d 374, 380 (6th Cir. 2008).

The facts and circumstances surrounding a Terry stop are judged against an objective standard, regardless of the subjective intent of the officer. Terry, 392 U.S. at 21-22; see also Whren v. United States, 517 U.S. 806, 814 (1996); United States v. Winters, 782 F.3d 289, 303 (6th Cir. 2015). The reasonableness of a stop is determined by two factors: (1) whether there was a proper basis for the stop, determined by examining whether the police were aware of specific and articulable facts which gave rise to a reasonable suspicion; and (2) whether the degree of intrusion into the suspect's personal security was reasonably related in scope to the situation at hand, as judged by the reasonableness of the police conduct given their suspicions and the surrounding circumstances. Smoak v. Hall, 460 F.3d 768, 779 (6th Cir. 2006).

An officer may continue a detention if something that occurred during the stop, before the initial reasonable suspicion dissipated, gives the officer additional reasonable suspicion. United States v. Bailey, 302 F.3d 652, 657-58 (6th Cir. 2002); see Arizona v. Johnson, 555 U.S. 323, 333 (2009)(an officer's inquiries into matters unrelated to the initial justification for the stop do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop).

In this case, defendant does not contest the reasonableness or scope of his detention while the officers were investigating the report of a disturbance at the residence, and the court finds that this investigation was reasonable in scope and duration.  The

officers quickly verified through their own observations at the scene that some type of agitated domestic argument involving defendant was occurring at the residence. The officers acted reasonably in handcuffing defendant for their safety and the safety of the resident of the premises. The entire investigation took fifteen to twenty minutes, and a part of that time was spent assisting defendant in obtaining his property from the residence. Rather, defendant argues that once the officers decided to release him and unhandcuffed him, any further investigation was unwarranted and the pat-down search of his backpack was unreasonable. The government argues that the pat-down of the backpack was based on a reasonable suspicion that defendant was armed and dangerous and that the pat-down was warranted for the safety of the officers.

Safety concerns are an integral factor in a Terry stop. Campbell, 549 F.3d at 372. During a Terry stop, an officer may conduct a limited search for concealed weapons if the officer believes that a suspect may be dangerous. Walker, 181 F.3d at 778. This standard is an objective one, that is, could defendant's conduct lead a reasonably prudent person in the same circumstances to believe that his safety was in danger. See Terry, 392 U.S. at 27 ("[T]he issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger."). The search must be limited to that which is necessary for the discovery of weapons which might be used to harm the officer. Walker, 181 F.3d at 778; Terry, 392 U.S. at 29.

If the officer feels what may be a weapon during a pat-down and he cannot determine solely by feel that it is definitely a

7

weapon, he is entitled to remove the item from a pocket or purse. See United States v. Moore, 8 F. App'x 354, 356 (6th Cir. 2001)(where officer detected a lump in defendant's pocket but was unable to exclude the possibility of a weapon, he may reach into the suspect's pocket and remove the item); United States v. Strahan, 984 F.2d 155, 158 (6th Cir. 1993)(where officer felt a rigid bulge in defendant's pocket during a Terry pat-down which he could have reasonable believed could be a weapon, officer could reach into defendant's pocket and remove the contents).

Officer Reffitt saw and heard defendant's initial encounter with Officer Cibulskas. Officer Cibulskas ordered defendant to show his hands and to remove them from his pockets. He did not comply until being ordered to do so several times. See United States v. Tillman, 543 F. App'x 557, 561 (6th Cir. 2013)(giving "significant weight" to defendant's failure to follow the officer's instructions to keep his hands on the steering wheel). When defendant did comply, instead of just showing his hands, he removed his backpack and threw it about two to three feet away behind the solid brick wall and out of sight of the officers. See id. at 561-562 (furtive movements can contribute to the existence of a reasonable suspicion that defendant is armed and dangerous, even if there is an innocent explanation for the movement). The officers testified that it was not necessary for defendant to remove the backpack to show his hands. Officer Reffitt thought this was strange and suspicious behavior. It appeared to Officer Reffitt that defendant was attempting to separate himself from the bag. Officer Reffitt's prior experience taught him that this was usually an indication that there may be something in the bag that the

8

person did not want to be connected with. Officer Reffitt testified that he had experienced several other encounters with individuals who had done this in an effort to separate themselves from a bag containing a gun or illegal contraband.

Officer Reffitt was in control of the defendant's property, including the backpack, and Officer Cibulskas was in control of the defendant. After conferring with Officer Cibulskas and obtaining defendant's clothing from the residence, Officer Reffitt realized that defendant was about to be released by Officer Cibulskas and that defendant's property, including the backpack, would be returned to him. As indicated above, this investigation occurred in the early morning, while it was still dark. In addition to observing defendant's hesitancy in cooperating with the officers and his suspicious act of throwing the backpack on the porch, Officer Reffitt knew that defendant had been involved in an angry confrontation with the resident of the premises and had kicked at her door. He knew that the resident remained on the premises, and that she wanted the defendant to leave. He observed that defendant, after being uncuffed, was standing just four to five feet away from the backpack. Officer Reffitt knew that Officer Cibulskas was planning on offering defendant a ride to the bus station to get him away from the property. If defendant accepted that offer, this would entail permitting the defendant, with his belongings, to enter the cruiser, where defendant's possession of a weapon could pose a safety risk to Officer Cibulskas. If defendant declined this offer, that would leave him free to return to the residence after the officers left the scene, where he could pose a safety risk to the female resident.

9

Still concerned with officer safety, Officer Reffitt decided to pat down the outside of the backpack as the defendant was being released by Officer Cibulskas. This was a de minimus intrusion on the outside of the defendant's property, and the degree of intrusion was reasonably related in scope to the situation at hand, namely, a pat-down for weapons. The pat-down through the thick material of the bag revealed a hard square object about two to three inches wide, which was large enough to be a weapon, at the top of the bag. This increased the officer's reasonable suspicion that the backpack might contain a weapon. Because Officer Reffitt could not say for sure that this object was not a weapon, additional investigation was permissible. See Moore, 8 F. App'x at 356. Officer Reffitt unzipped the outer pocket of the backpack and placed his hand inside the pocket so that he could feel the object again. This was also a minimal intrusion, far short of a full-blown search. He was then able to feel the outline of a firearm and the trigger guard, determining that the object was in fact a firearm. At that point, he had probable cause to believe that there was a firearm in the backpack, and he was justified in unzipping the main compartment of the backpack and removing the firearm from the top of the bag. He gave the hand signal to Officer Cibulskas to arrest the defendant. After defendant was handcuffed, Officer Reffitt then unzipped the main compartment of the backpack and removed the firearm.

Considering the totality of the circumstances, a reasonable police officer in Officer Reffitt's position could conclude: (1) that defendant's hesitancy to show his hands indicated that he was thinking during that time that if he was subjected to a pat-down

search while wearing the backpack, the backpack would be included in that pat-down search; (2) that defendant's decision to throw the backpack on the porch before raising his hands indicated defendant's concern that a pat-down of the backpack would disclose the presence of contraband or a weapon; and (3) that defendant's act of throwing the backpack away from him rather than keeping it on his person was suspiciously inconsistent with defendant's statements to Officer Cibulskas that he was in a hurry to collect his property so that he could get to the bus station.

A reasonable officer in Officer Reffitt's position could further reasonably conclude from the circumstances that the backpack contained contraband or a weapon, and that concerns for the safety of the officers and the resident of the premises justified a pat-down of the backpack before returning it to the defendant. The pat-down detection of a hard object which could be a weapon would have reinforced the reasonable suspicion of a reasonable officer that a further pat down of the backpack by unzipping the outer pocket was warranted. Once the outline of the firearm and the trigger guard were detected, a reasonable officer would have probable cause to believe that the bag contained a weapon, and would be justified in opening the backpack to remove the weapon.

Defendant contends that once the officers decided to release him, the investigation into the resident's complaint was concluded and the backpack should have been returned to him unsearched. Although the officers had decided that defendant would be released, the scene had not been cleared as, even after uncuffing the defendant, Officer Cibulskas still had safety concerns that

11

defendant could become violent or charge into the house.  There is no evidence that defendant was told that he was free to leave. Even if this had occurred, the mere utterance of those words by Officer Cibulskas would not categorically signal the end of the investigation in this case because the officers performed different tasks during the investigation.  It was Officer Reffitt who was dealing with the defendant's property, and Officer Cibulskas was focused on the defendant, not on what Officer Reffitt was doing with the backpack.

Officer Reffitt's pat-down of the backpack did not exceed the scope of the legitimate <u>Terry</u> investigation.  A pat-down search does not have to occur at the beginning of the <u>Terry</u> encounter. <u>See</u> <u>Johnson</u>, 555 U.S. at 332-334 (upholding the pat-down of the passenger of an automobile during a <u>Terry</u> stop, noting that the officer "was not constitutionally required to give Johnson an opportunity to depart the scene after he exited the vehicle without first ensuring that, in so doing, she was not permitting a dangerous person to get behind her").).  "Justification for a protective pat-down based upon a fear for officer or bystander safety can arise after the commencement of either an investigative stop or a consensual encounter." <u>United States v. Ellis</u>, 501 F.3d 958, 961 (8th Cir. 2007).  In this case, events occurred during the course of the officers' investigation of the resident's phone complaint which would have given a reasonable officer in Officer Reffitt's position reasonable suspicion that defendant had a weapon secreted in his backpack, a new situation which warranted further investigation.  <u>See</u> <u>Bailey</u>, 302 F.3d at 657-58.  At the time of the pat-down, defendant was no longer in handcuffs and was in a

12

position where he could have regained control over the backpack.

Further, Officer Reffitt was reasonably concerned about returning a backpack, which he reasonably suspected contained a weapon, to the defendant without first inspecting it. In <u>United States v. Walker</u>, 615 F.3d 728, 733-34 (6th Cir. 2010), the Sixth Circuit upheld the officer's actions of further unzipping a partially unzipped duffel bag in the possession of the defendant to determine if a firearm was inside, even though the officer had moved defendant eight feet away from the duffel bag. The court noted that defendant's argument that the officers lacked probable cause to arrest him at the time of the search

> left the officers with a difficult set of options. They could make a limited search of the bag to ensure their own safety. Or they could arrest the suspects and take them into custody, even though it might not yet have been clear that probable cause existed that they had robbed the bank. Or they could let the men go and return the un-searched bag to Walker. Faced with these kinds of split-second judgments, police officers, it is clear, have a much more difficult job than we judges, who may take several weeks (if not months) to resolve these kinds of issues. That is why we do not "require that police officers take unnecessary risks in the performance fo their duties." (Citations omitted.) Where, as here, the only alternative is to give a suspect access to a potential weapon (in an un-searched bag), a <u>Terry</u> search for weapons is justified—and reasonable.

<u>Id.</u> at 734. <u>See also</u> <u>United States v. Brakeman</u>, 475 F.3d 1206, 1212-13 (10th Cir. 2007)(upholding opening of glasses case removed from defendant's possession during a <u>Terry</u> pat-down to look for a weapon where defendant could have broken free and seized the case, or where the case would have been returned to him if he was released); <u>United States v. McClinnhan</u>, 660 F.2d 500, 504 (D.C. Cir. 1981)(upholding officer's search of briefcase removed from

13

defendant's reach for weapons because officers would be compelled to return the briefcase to the defendant upon his release, thus placing themselves in the danger they sought to avoid) abrogated on other grounds as recognized by United States v. Thompson, 234 F.3d 725, 728 (D.C. Cir. 2000). Cf. Michigan v. Long, 463 U.S. 1032, 1051-52 (1983)(upholding the Terry search of the passenger compartment of an automobile, noting that "if the suspect is not placed under arrest, he will be permitted to reenter his automobile, and he will then have access to any weapons inside.").

III. Conclusion

The court concludes that a reasonable officer, based on experience and the totality of the circumstances, could reasonably believe and suspect that defendant's backpack contained a weapon which posed a threat to the safety of the officers and the female resident. The pat-down of the backpack occurred during a legitimate Terry encounter which was supported by reasonable suspicion, and the minimally intrusive pat-down of the backpack did not constitute an unreasonable infringement of defendant's privacy interests in the backpack. Once Officer Reffitt felt the outline of a gun in the backpack, he had probable cause to believe that the backpack contained a firearm, and the removal of the firearm from the backpack did not violate defendant's rights under the Fourth Amendment.

In accordance with the foregoing, defendant's motion to suppress evidence (Docs. 15 and 16) is denied.

Date: December 21, 2018       s/James L. Graham
                              James L. Graham
                              United States District Judge